I think we can start on the first case on our argument calendar which is, I don't know if I'm pronouncing it right, Mihai Nicusor-Remus. Mihai Nicusor-Remus, Your Honor. Could you say that again? Mihai Nicusor-Remus. Okay, and that is Ms. Daza. Daza. Ms. Daza for appellate and then we'll have Mr. Spurlock for the government. Please proceed. Thank you, Your Honor. Good morning. May it please the Court, Rosario Daza for Petitioner Mihai Nicusor-Remus. Attorney Lori Walsh on briefing is at Council table. I'd like to take a few minutes for rebuttal and address three main points, time permitting. First, this Court should terminate proceedings under INA 217 because the agency erred when it denied Mr. Nicusor's motion to terminate and failed to recognize that he was no longer a visa waiver program entrant. Second, the government's violations of Mr. Nicusor's substantive due process rights warrant enjoining deportation under the Santo Bello Doctrine and the State Created Danger Doctrine. Third, the record as a whole compels a reasonable fact finder to conclude he met his burden for withholding of removal and protection under the Convention Against Torture. Counsel, could I interject a question, please? Before we get into all that, could you please address whether we have jurisdiction? Was there a final order of removal that's extant that gives us the power to hear this? Yes, Your Honor. There's a final order of removal before this Court. The immigration judge denied Mr. Nicusor asylum withholding in CAT on two occasions and the BIA affirmed that decision. What is the final order of removal? Is it the 2002 order of removal or was there a subsequent order of removal? Because what you're referring to is that the agency denied relief from the final order of removal. There's a 2012 immigration judge decision and there's also a 2013 decision after the board remanded the case based on Enriquez Rivas for reconsideration of a particular social group. And did that decision order removal? Yes, Your Honor. Can you give me the cite to that? Yes. The 2013 decision is at 88 in the administrative record. Mr. Nicusor is a Romanian citizen who I'm seeing the orders and it says the application for asylum is denied. The application for withholding of removal is denied. The application for withholding of removal under CAT is denied and the application for deferral of removal under CAT is denied. And where does it say that he's ordered removed? You're right. It does not say that he's ordered removed. The BIA decisions subsequently presume that. Well, there's a 2002 order of removal outstanding, but my understanding is that your position is that it was executed. Absolutely, Your Honor. So do we have jurisdiction if there's no subsequent order of removal? No. The 2002 order was absolutely executed when he left under FBI and ICE escort and was given an I-94 arrival record pursuant to significant public interest parole. So what does that mean for your client if we determine we don't have jurisdiction? Well, Your Honor, because the agency denied his motion to terminate, he did not get a chance to be adjudicated under 240 proceedings, which would have given him eligibility for adjustment under a pending I-130 petition. So if we determine we had no jurisdiction because the order of removal was executed when he went into Mexico and returned, which I understand is your position, then the holding of this court would be that there was no order of removal and he was no longer a VWP entrant. So what would that mean? Would you have to file a motion to reopen or how would that work out below? I think that the government would have to recharge him properly in 240 proceedings. But this court is the first and only forum that can consider his substantive due process claims. Well, if we have no jurisdiction, we don't have jurisdiction over that either, right? Yes, Your Honor. So if you prevail on your argument that he executed his order, we would have to say we lack jurisdiction? Yes. I would hope your opinion would also make clear that 240 proceedings would be proper and that Mr. Negusher would be eligible for adjustment under his pending I-130 petition. Counsel, if, because this jurisdiction issue is sidetracking you from your argument, let me just say we can issue an order after argument that would permit both parties to write supplemental briefs on the jurisdiction issue. Okay. Your Honor, you're absolutely right that there was no un-executed deportation order. The one and only deportation order was the 2002 order after which Mr. Negusher left the government. As the government knows, he re-entered pursuant to the significant public interest parole. If the government doesn't agree with that interpretation, are there enough facts in this record for us to even make a determination about what happened in 2004? Yes, Your Honor. There is also an ICE email now in the record that shows that the government tried to get parole in place for Mr. Negusher, but the LOS Port Director, the Los Angeles Port Director did not authorize Las Vegas ICE authorities to grant him parole in place. That would have retained his status as a VWP entrant because he would not have executed the order by leaving with a 10-hour road trip to the border and subsequently re-entering with the grant of significant public interest parole. The I-94 says that he boarded in Tijuana. Does that mean boarded is sort of a strange term to use, but that means that his entry point was from Tijuana? Yes. That was his land entry point, which is in the record at 477. Where's the denial of the parole in place in the record? Do you have a cite to that? Yes, Your Honor. That is Exhibit M to the memorandum that was filed in Nevada District Court regarding the broken plea agreement promise, and that was obtained through a FOIA. The government had submitted another ICE email showing that ICE agent Lazzaro had told ICE authorities that a special agent Pinto was requesting significant public interest parole, so presumably the government also had access to the other ICE email showing that they were unable to get what is called parole in place. When he went across the border, is there any evidence in the record concerning the Mexican official's reaction? Did they accept him? Did they say anything? Is there anything about that? There's no evidence in the record as to that. The government, in its response to the motion to terminate, alludes to something about Mexico not accepting him, but there's no evidence in the record as to that. One way or the other. One way or the other, but he was issued an arrival record, and he testified that he went through the border checkpoint. The immigration officials already knew what was happening because there had been sign-off for this significant public interest parole from on high. Should the court reach the other issues, I'll proceed with my argument. The board erred in holding the immigration judge did not have jurisdiction to determine Mr. Nikosher was no longer admitted pursuant to the visa waiver program and to terminate proceedings under INA 217. This holding is akin to what the Supreme Court has called drive-by jurisdictional rulings because the board conflated limits on relief to VWP entrance with the court's authority to determine whether Mr. Nikosher was wrongly charged in the first place. Are you familiar with the BIA's decision in matter of DMCP? No, Your Honor. Because there is a precedential opinion. They said that neither an IJ nor the BIA has jurisdiction to consider whether asylum-only proceedings were improvidently instituted pursuant to a referral under the VWP. Yes, Your Honor. While the agency uses the term jurisdiction, what the board does is the limit is on relief and an immigration judge has the authority to determine whether he has authority, he or she has authority over the matter presented to him. So are you saying that the BIA's interpretation of its regulations is not worthy of deference? Is that your position? No, Your Honor. It's certainly worthy of deference, but I think that the board has been loose with what it describes as a jurisdictional issue versus a limit on relief for VWP entrance. I think that the immigration judge here certainly had authority to determine both that there was no unexecuted removal order and that 217 proceedings were improper because Mr. Nikosher's last entry was pursuant to the significant public interest parole. That's the dispositive issue and instead the judge committed legal error when she denied the motion to terminate because as she said, a parole is not an admission. And is that based on your interpretation of the regulations or what is that based on? That's based on the fact that under INA 101-G, Mr. Nikosher's 2004 departure effectuated his prior deportation order. I understand the basis of your argument that his deportation order was executed. I don't understand the basis of your argument that the BIA and the IJ could consider anything but asylum and withholding in the asylum-only proceeding. Well, Your Honor, the board and the government cite to matter of AW, which is a case that involves whether the judge can consider bond, which is another form of relief and it's usually done in a separate proceedings. But in Freeman v. Gonzalez, this Court's 2006 decision, the Ninth Circuit said, notwithstanding that the no contest clause severely restricts an alien's ability to seek review of a removal decision, the alien may still claim that she is not subject to VWP procedures at all. That's citing Honda v. Clark. I will reserve the rest of my time for rebuttal. Thank you, Counsel. Thank you. Now is it Mr. Spurlock? Yes, Your Honor. May it please the Court, Matthew Spurlock on behalf of the United States. I'd like to start sort of where we left off with the jurisdiction in this case. The government's never asserted that this Court didn't have jurisdiction in this case, and I think the basis of that jurisdiction with regard to the VWP would be Bingham v. Freeman, which says that this Court has jurisdiction. Do you agree that the only order of removal here is the December 2002 order? Is there some subsequent order of removal? I don't believe there was any subsequent order of removal. I don't believe the 2002 order of removal was executed. So if we disagree with you and agree with the opposing counsel that it was executed, then what's the result here? We would lack jurisdiction, correct? And then what would happen? If this Court lacked jurisdiction? Well, if the December 2002 order was executed, if we should agree with your opposing counsel, then there would be no final order of removal and we would lack jurisdiction, it would be my understanding. Do you agree with that? That's correct, Your Honor. And then what would happen to Mr. Nekusher if we determined we lacked jurisdiction because the deportation order was executed? That's a very good question, Your Honor, and this gets very messy because it's not clear if it wasn't executed, there is no removal order. That's correct. I think this Court, I assume he would still be eligible for asylum withholding and CAT consideration as well. I guess this goes to Judge Gould's point that we could get supplemental briefing on this issue and that I shouldn't be asking these questions, so I will stop. Well, we would argue that, first of all, primarily in the government's brief, we focus primarily on that 240 proceedings were properly found by the immigration judge and the, I'm sorry, the 217 proceedings, the immigration judge and the board properly found that the immigration judge didn't have jurisdiction to consider the decision by DHS to take this, the VWP route. And we stick with that argument. I think our argument is also just more in terms of a pragmatic effect, which is there's absolutely no reason to remand these to anybody for consideration under 240 because there's nothing this petitioner would receive under 240 proceedings which he hasn't got already. He's already had a look by the board and the immigration judge on asylum withholding of removal and CAT protection. Could I go back? This is not the additional briefing, but from your brief, I understood that the government was no longer challenging the fact that he went into Mexico and then came back into the United States. Is that correct? We don't concede that this didn't occur. I think DHS's argument before the immigration judge, I think, still holds that we don't consider that to be, first of all, an admission into Mexico or a removal from the United States. The case which is kind of directly on point with this is the Handy case, which was decided a year after... So there he was denied entrance in Canada. Was Mr. Nekushaward denied? Is there anything in the record indicating he was denied entrance into Mexico? No, but there's nothing in the record that shows that they admitted him to Mexico either. We don't know the specifics of what occurred when he entered Mexico, but it doesn't appear. And there's no evidence that Mexico admitted him into Mexico. But nothing in the 1101G requires admission. So you're relying on HONDA, but are you familiar with Aguilera Ruiz v. Ashcroft, our decision in that case? It sounds familiar, ma'am. I don't remember the exact specifics. In there we said that if a citizen of Mexico went to Tijuana to buy tequila, candies, and piñatas, he had sufficiently engaged in a departure from the United States and recognized that the departure executed the order of deportation. So if we relied on Aguilera Ruiz, which was actually prior to HONDA, I believe, what Mr. Nekushaward did would have been enough to execute that order, wouldn't it? Well, first of all, he was an order removed to Mexico. Mr. Nekushaward came here on a fraudulent passport from France. Does it matter where he left? Because the 1101G just says, any alien ordered, deported, or removed who has left the United States shall be considered to have been deported or removed in pursuance of law. It doesn't even say he has to go into a foreign country. It just says he has to leave the United States. What do we do with that? I think this is a little bit different, because I think this is under the consideration specifically with the VWP, whether that would take somebody out of the realm of the VWP. And I think that's what HONDA was saying, was just because you step across the border doesn't necessarily mean that takes you out of the VWP concept. You don't lose that just because you stepped out of the United States for a while. And importantly in that case is that he wasn't admitted into Canada. And there's no evidence here that the petitioner was admitted into Mexico. Well, what's your basis for saying you have to be admitted into a country in order to be deemed to be deported for purposes of 1101G? Well, I think we're relying on HONDA. That's what they focused on was in HONDA. But as the government brief sort of highlights is that our primary argument for why remand for 240 proceedings doesn't make sense is because it would be futile and there's basically no reason to send him back, because he's received asylum, withholding and CAT consideration already. So would he be entitled to seek cancellation of removal relief? I believe that's what they were arguing, that additional relief is available. They didn't specifically argue that they were eligible for anything, Your Honor, but I think they did mention there was a possibility for adjustment of status, which brings up the interesting question, because you can apply for adjustment of status within the VWP regulations specifically provide for an application for adjustment of status. And this Court has found that in the Freeman case that that's permissible. But they've never applied for the relief of adjustment of status, either within the 90 days of being admitted under the VWP or after the 90 days or at any time since. You know, part of their argument was this, they were entitled under the plea agreement for assistance with the S visa application. And I think they argued that having been granted that sort of application, you have a better platform for seeking adjustment of status. If you receive an S visa? Right. I think this refers to their argument that they didn't get the benefit of their plea with the District of Nevada U.S. Attorney's Office, I believe, which we briefed after a regular briefing in this case. And for the reasons that we stated in our brief, I don't believe that there's any merit to that argument that he's entitled to an S visa because he was never promised an S visa specifically. Counsel, let me ask you a question that may be coming from left field, but just to make sure I'm not missing something. If he, in fact, was removed when he went to Mexico and then he came back afterwards, is he subject to criminal prosecution? For reentering after a deportation? In the company of two government agents. That would be a good defense, I think. Who paroled him in. An FBI agent and an ICE agent. That would be a difficult question, Your Honor. I think that because he had parole at that time, he had the I-94, which was good for one year, I don't know that he would have been subject to criminal prosecution for that. After that year expired, the parole expired. It would be a parole overstay. So if he wasn't a VWP entrant, per hypothesis, then he would just be in the country unlawfully, is that, without documentation? That's correct, Your Honor. And that's actually an important question when we're talking about the potential theoretical relief of adjustment of status, because even if it's, as they say, he was removed and he reentered and he no longer was under VWP status, he still wouldn't be eligible for adjustment of status, because he had, from 2005 on, after the parole expired, he was in the country unlawfully. So he has unlawful presence from 2005 to now, which would make him eligible for adjustment of status anyway. So I guess our primary argument with the VWP issue is that, assuming it was decided that he was entitled to 240 proceedings, it would be completely futile to send him back, because he would just get the exact same thing. He would be in the same spot that he's already been, which would be an adjudication on asylum withholding and CAT. And there's no other relief, because he is, in fact, an aggravated felon, which has never been disputed in this case, that he's an aggravated felon. On the S visa issue, as I read the plea agreement, that's as close to an actual promise as you probably could ever get in a plea agreement. If he provided substantial assistance, they would assist him in all immigration matters and would attempt to obtain an S visa for him. And an S visa is granted by the Attorney General, which is the Department of Justice, but it doesn't appear that anyone ever did anything for him there. Why isn't that a due process violation that needs to be looked at by someone? Your Honor, our argument is that it was an explicit promise. It was a promise that if he completed these, he agreed to assist the government, that they would possibly give him an S visa. There's no disagreement by anyone that he didn't provide substantial assistance? Well, not as far as if you look just at the motion for downward departure filed by the government in the district court case, I would agree with you, Your Honor. They specifically allow what he did. There's not complete evidence in the record that this Court has before it, but there's no evidence that he did ever testify in an actual criminal case against any of the co-conspirators. It appears that he did participate in assisting the government in building cases, but we would argue that it's not clear at all that he actually assisted in any actual prosecutions. And our argument is that although this case is very, very similar to the Morgan case in how this was dealt with in the plea agreement, the individual in Morgan did provide assistance to the U.S. Attorney's Office, and the U.S. Attorney's Office acknowledged that and did say that they would assist him. But like this case, it was an explicit quid pro quo that if you do this, you will get an S visa. The U.S. Attorney can't even decide whether the individual gets an S visa. That has to go to CIS to be determined. But it's obviously necessary for the law enforcement side to build that up for CIS. And for whatever reason, it was determined that he did not do that, and so that's why he's not entitled to an S visa. It's not a mandatory thing that he receive a visa. If I could, I have about two minutes left. I would argue that because this Court doesn't need to go back and send this to 240 proceedings, because there's no need to send it back, if you look at the findings on withholding and removal, and Catt in this case, are appropriate and substantial evidence supports those decisions, the immigration judge and the judge's decision. Particularly, the substantial evidence supports the withholding finding, because the petitioner here has never experienced past persecution. He's never been threatened by anybody concerning anything from Romania or the United States. It's primarily based on some sort of vague statements from, I believe, his father, his ex-wife, and a friend who supposedly heard from the primary individual who recruited this petitioner into the criminal gang in the United States, was in Romania, and made some sort of threats against the petitioner's life. We don't know from those statements when those threats occurred, if they occurred back in 2005, when this all was happening, or more recently. It's not clear. We don't know if this individual is still a member of a criminal enterprise. No one's ever reached out to the petitioner to threaten him, and his family's never been threatened by anybody because of the purported vendetta against the petitioner. And the same goes for Catt as well. We'd argued that substantial evidence supports the Catt determination as well. He's never been tortured. Regarding the evidence that petitioner puts forth for, they rely on their expert witness, and they say that the expert witness was ignored by the immigration judge and the board. The evidence in the record does not bear that out. The board considered the expert and the country evidence in the record, and determined that, first of all, although the expert, they determined that yes, there's corruption in Romania, and yes, there are problems with crime in Romania, but they made the determination that Romania, as a new member of the European Union, has made steps to combat corruption in the country. The expert said that those steps were not really very valid, because this could just be possibly, you know, just them trying to look good before the European Union. But I think the board and the immigration judge determination that that's a valid basis to consider that the Romanian government would not participate or acquiesce in any sort of persecution or torture of the petitioner in this case. And based on that, there's no evidence in the record that compels the conclusion that the board didn't get it right with the CAC claim and withholding a removal. I think I've run out of time. Thank you. Thank you very much, counsel. Counsel, you get a brief rebuttal time. A couple of brief points on rebuttal. The government asserts that a remand would be futile because Mr. Nikosher is not prima facie eligible to adjust status. But this court cannot deny a petition for review on an issue that was not raised by the board. That's Hernandez-Cruz v. Holder. And your Honor is absolutely right that Mr. Nikosher would be eligible to adjust status before CIS, if in 240 proceedings, and if the I-130 was approved, an arriving alien remains an arriving alien, even if paroled pursuant to 212 D-5, and even after any such parole is terminated or revoked. That's also in Bona v. Gonzalez. This Court's 2005 decision, an alien paroled into the United States is entitled to apply for adjustment in the removal proceedings. Judge Tunheim referred to what I think is a troubling issue, which is that the government violated Mr. Nikosher's due process rights when they induced him to become an informant at great risk of harm or death, and to plead guilty and give up his constitutional right to silence to a trial, plead guilty to what the IJ found was an aggravated felony and a bar to asylum, in exchange for a promise to protect him by filing the S-Visa, if he provided substantial assistance, which he clearly did, as evidenced in the motion for a downward departure. The government is not correct that he would be ineligible for adjustment due to having pled to what the judge found was an aggravated felony. He is eligible for waivers for the offense, for the prior deportation and for his unlawful presence. He hasn't had a chance to put forth discretionary relief because he was not in 240 proceedings. On the due process claims that you've made, is there enough evidence in the record for this Court to make determinations on that? And if there isn't, how do we develop that record? So Morgan is instructive in this regard, because it shows that post real ID, the district courts do not have the authority to consider final challenges to final orders of removal on due process grounds. So if this Court found that there was additional fact-finding necessary, this Court could transfer to the district court for an evidentiary hearing. While the record of the criminal case is closed, there is ample evidence in the record that the government never did anything to protect Mr. Nikosher. The AUSA in this case received from Attorney Walls the S-Visa application nearly completed, including what records from the criminal case were available in the administrative record here. And all that that office needed to do was to sign off. The government's extreme delay prejudices Mr. Nikosher's chances of being granted the S, because the last eligibility factor contemplates that he would still be essential to the investigation and prosecution of an ongoing case which has long concluded. It's hard to know if DHS would still grant him, since at the time when this should have been filed, and he was under a grant of significant public interest parole, he was essential to the investigation and prosecution, and essentially bringing down this 30-person crime ring as outlined in the motion for a downward departure. I was just going to say, so the application is still at the Assistant U.S. Attorney's office? So the Assistant U.S. Attorney received all of those materials in September of 2016. In December of 2016, she finally responded and said that she could not take any additional action, although she'd taken no action up to that point, because oil was representing the government. This information is outside the record, but she is no longer in the criminal division, so it would be reassigned to someone else. Unless the judges have further questions. Complicated case. I appreciate the excellent arguments on both sides. We'll decide if we would like more on the question of jurisdiction, and if so, we'll send an order promptly. Okay. Well, I thank both counsels.
judges: Gould, Ikuta, Tunheim